UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN LAWRENCE O'KEEFE, et al.,          Case No. 08-12162

        Plaintiffs,                       HONORABLE SEAN F. COX
                                                         United States District Judge
v.

ST. CLAIR, COUNTY OF, et al.,

        Defendants.
_____/

## OPINION & ORDER

This is an action for federal and state unfair trade practices, tortious interference with business relations, and wrongful termination, arising under the Lanham Act, 15 U.S.C. § 1125, and Michigan common law. The matter is currently before the Court on the Defendants' joint Motion to Dismiss [Doc. No. 8] The parties have fully briefed the issues, and the Court declined to hear oral argument pursuant to Local Rule 7.1(e)(2). For the reasons below, the Court **DENIES** the Motion to Dismiss.

## I.  BACKGROUND

This is a Lanham Act claim with supplemental Michigan state law tort claims, filed by the Plaintiffs on May 19, 2008. Plaintiffs in this action are John O'Keefe ("O'Keefe"), his wife Jan O'Keefe, and Virdis Waste Control LLC ("Virdis") (collectively, "the Plaintiffs"). Defendants in this action include St. Clair County, Michigan ("the County"), CTI and

1

Associates, Inc. ("CTI"), and Accelerated Landfill Technology, LLC ("ALT") (collectively, "the Defendants").

### A. Facts Alleged in the O'Keefe Complaint

O'Keefe was employed by the County as a Landfill/Resource Recovery Manager for the Smiths Creek Landfill from June 2, 1997 through January 3, 2007. [Complaint, Doc. No. 1, ¶ 12]. O'Keefe was an at-will employee without a formal employment agreement with the County, and the County did not have a policy in place regarding the ownership rights of Patents developed by County employees. [¶¶ 14-15].

Marugappan Subbarayan ("Subbarayan") is President of CTI. CTI had a contract with the County, and worked with O'Keefe in connection with the Smiths Creek facility on issues of operation and landfill design. [¶ 18]. Sometime between April 28, 2004 and May 5, 2004, O'Keefe and Subbarayan discussed the concept of distributing septic tank waste into a landfill in order to expedite the decomposition of solid waste and to increase production of methane gas. [¶ 24]. Their idea culminated in the U.S. Patent & Trademark Office granting Patent No. 7,347,648 ("the '648 Patent"). [¶26]. The '648 Patent lists O'Keefe, his wife Jan O'Keefe, Subbarayan, and another employee of CTI, Dr. Te-Yang Soong, as co-inventors.

As early as January 25, 2005, the County began to express interest in the financial benefits of the '648 Patent. [¶33]. On November 3, 2005, Mr. Shaun Groden ("Groden"), County Administrator and O'Keefe's supervisor, scheduled a meeting with O'Keefe, Subbarayan, and Mr. Gary Fletcher ("Fletcher"), corporation counsel for the County. At that meeting, Fletcher pressured O'Keefe and Subbarayan to provide the County with ownership

rights over the '648 Patent, threatening that O'Keefe could be terminated as an at-will employee, and threatening Subbarayan that the County could drop their contract with CTI. [¶35]. As a result of this pressure, O'Keefe indicated in March 2006 that he would consent to an arrangement between O'Keefe, CTI, and the County, whereby each would hold a one-third interest in the '648 Patent. [¶38]. That deal, however, was never consummated.

O'Keefe alleges that, sometime before January 4, 2007, under the threatened termination of their contract with the County, CTI agreed to assist the County in a covert effort to exclude O'Keefe from any joint marketing campaign for the '648 Patent. [¶59]. On January 3, 2007, Groden suddenly terminated O'Keefe's employment with the County. No explanation has since been given for his termination. [¶64].

On January 4, 2007, CTI and the County created Accelerated Landfill Technology, LLC, a joint venture between those parties whereby each contributed $60,000 in return for a 50% stake in a venture to promote the '648 Patent for profit. [¶65-70]. Subbarayan and Soong assigned their rights in the '648 Patent to CTI, while O'Keefe and his wife assigned their rights to plaintiff Virdis Waste Control, LLC. [¶¶72, 74].

O'Keefe alleges that Groden falsely stated at a January 2008 meeting of the County Commissioners that the County only had two partners (Subbarayan and Soong) on the '648 Patent's creation. [¶77]. Fletcher gave a quote in the January 17, 2008 edition of a local newspaper that "anyone who wants to use the technology would have to pay us royalties." [¶78]. Fletcher also gave a quote on January 26, 2008, stating that putting O'Keefe's name on the patent was "misleading," and noting that "the County should have been put on the patent in the first place." [¶81].

3

O'Keefe argues these actions by the Defendants and their agents caused a probability of misunderstanding among consumers as to O'Keefe's legal rights in the '648 Patent, and that statements by County officials impaired Virdis's ability to market the '648 Patent. [¶¶83-84]. Since his discharge in January 2007, O'Keefe has been unable to find work, with potential employees stating that the '648 Patent issue with the County has left a "cloud" over his record. [¶¶89-90].

The Plaintiffs filed their complaint on May 19, 2008, alleging five causes of action:

Count I.     Federal Unfair Competition under the Lanham Act, 15 U.S.C. § 1125;
Count II.    Tortious Interference with Business Expectancy by the County;
Count III.   Tortious Interference with Business Expectancy by CTI;
Count IV.    Michigan Common Law Unfair Competition; and
Count V.     Wrongful Termination.

B.  The Defendants' Motion to Dismiss

The Defendants filed their Motion to Dismiss [Doc. No. 8] on June 30, 2008. In it, Defendants argue that Plaintiffs cannot meet their burden of proof under § 1125(a)(1)(B). Defendants argue that § 1125(a)(1)(B) only allows for suit in cases involving a "good" or "service," and that patent rights are a property interest not embodied in either of those categories. Because Count I is the only federal question before this Court, Defendants argue that its dismissal requires the Court to dismiss the Michigan state law claims in Counts II-V.

## II.  STANDARD OF REVIEW

In assessing a motion to dismiss for failure to state a claim under FED.R.CIV.P. 12(b)(6), the Court must treat all well-pleaded allegations in the complaint as true. *Kostrzewa v. City of*

4

*Troy*, 247 F.3d 633, 638 (6th Cir.2001).  Dismissal is only proper if, on the pleadings themselves, the plaintiff does not have a "reasonably founded hope" of making their case.  *Bell Atlantic v. Twombley*, 550 U.S. 554, 127 S.Ct. 1955, 1970 (2007).

III.  ANALYSIS

Federal Circuit case law clearly supports denial of a Rule 12(b)(6) motion where, as here, a plaintiff's complaint alleges a violation of 15 U.S.C. §1125(a)(1)(B) caused by a defendant's bad-faith advertisements that they are the exclusive legitimate source of a patented good or service.  Further, as the facts underlying the Plaintiffs' state law claims [Counts II-IV] stem from a "common nucleus of operative fact," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966), with the Lanham Act claim in Count I, this Court's exercise of supplemental jurisdiction over those claims is proper.

A.  <u>The Lanham Act Claim</u>

Count I of the Plaintiffs' Compliant alleges the Defendants engaged in Unfair Competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). [Doc. No. 1, ¶¶ 105-14]. Section 1125(a)(1) states as follows:

> *Any person who, on or in connection with any goods or services, or any container for goods, uses* in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or *false or misleading representation of fact*, which-
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

5

> (B) *in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities*, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such an act.

15 U.S.C. § 1125(a)(1) (emphasis added).  This provision of the Lanham Act "is designed to, among other things, protect competitors from misrepresentations which a defendant makes about his own or another's products..." *Brant Consolidated, Inc.*, *v. Agrimar Corp.*, 801 F.Supp. 164, 174 (C.D.Ill.1992).  The argument advanced by the Defendants centers on the language of § 1125(a)(1)(B): a patent is not a "good," a "service," or a "commercial activity" under the Act, therefore Plaintiffs cannot claim a violation of the Lanham Act. [Doc. No. 8-2, p.7].

Defendants' argument is misplaced in light of *Zenith Electronics Corporation v. Exzec, Inc.*, 182 F.3d 1340 (Fed.Cir.1999).  In addition to specifically holding that plaintiffs like O'Keefe may bring a claim under § 1125(a)(1)(B), *Zenith* also distinguished the primary case upon which Defendants rely, *Pro-Mold & Tools Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568 (Fed.Cir.1996) and limited its application.  The Federal Circuit stated as follows:

> *Pro-Mold* must be understood in the context of general patent law.  A patent procured through inequitable conduct is not invalidated thereby, but the courts refuse to enforce such a patent as a matter of equitable principle.  *Pro-Mold* tells us that the remedy...for such an insupportable patent suit is not a suit for unfair trade practices under the Lanham Act.
> Here, in contrast...the claim is based on alleged marketplace statements...The gravamen of [the claimant's] claim is marketplace misconduct, not abuse of the administrative process.

*Zenith* at 1349.

The underlying facts of *Zenith* are very similar to the instant case.  Zenith had granted a

6

license to Elo Touchsystems, Inc. ("Elo Touch") for use of its patent over touch screen computer systems, and Zenith and Elo Touch sued Exzec for infringing upon that patent.  Exzec filed a counterclaim under § 1125(a)(1)(B), arguing that Elo Touch had falsely stated to potential customers of Exzec that Exzec's system infringed upon the Zenith patent, and that Exzec could not manufacture a noninfringing system.  *Zenith* at 1343.  The Federal Circuit held "a patentee's allegedly false representation of patent infringement is not actionable under [§ 1125(a)], but that a *patentee's allegedly false representation that it is the exclusive source of a certain type of product because of its patent is so actionable*."  *Id*. at 1344 (emphasis added).  "Exclusive-source claims blow a greater chill on competition and are less vital to the patentee's effort to vigorously protect his legitimate interests.  The patentee who asserts such claims, therefore, is liable for their falsity, regardless of his good faith."  *Id*. (internal citations omitted).[1]

Similar to *Zenith*, in the instant case Defendants are alleged to have made several statements in the press that, should others want access to the technology embodied in the '648 Patent, they would have to get permission from the Defendants.  In the January 17, 2008 newspaper article, County representative Gary Fletcher was quoted as saying "[a]nyone who wants to use the technology would have to pay us royalties."  The Defendants also consistently downplayed John O'Keefe's rights in the '648 Patent through their contacts with the media, implying that the Defendants would be the exclusive legitimate source for licensing the

---

[1] Other courts prior to the *Zenith* holding have also upheld "exclusive-source" claims under § 1125(a)(1)(B).  In *Brant Consolidated, Inc. v. Agrimar Corp*., the Central District of Illinois found a violation of § 1125(a)(1)(B) where the defendant told plaintiff's clients that the defendant was the exclusive source of an algae extract.  *Brant*, 801 F.Supp. 164, 174 (C.D.Ill.1992).  Similarly, in *Mitsubishi Electric Corp. v. IMS Tech., Inc.*, 1997 WL 630187, *8 (N.D.Ill. Sept. 30, 1997), the court upheld a § 1125(a)(1)(B) claim where the defendants created a false impression that they were the lone valid source for certain computer technology.

technology embodied in the '648 Patent. Taking the Plaintiffs' pleadings as true, *Zenith* allows the Plaintiffs to bring a claim for unfair competition under § 1125(a)(1)(B).

*Zenith* puts forth a five-part test for proving a violation of § 1125(a)(1). The Defendants make an additional argument that their statements to the press do not satisfy the first prong's requirement of a "commercial advertisement or promotion," and therefore Plaintiffs' § 1125(a)(1)(B) claim should be dismissed. [Doc. No. 15, p.2].

The Sixth Circuit held that "speech need not closely resemble a typical advertisement to be commercial," and "any economic motivation" for making such a statement is relevant to the inquiry. *Semco, Inc. v. Amcast, Inc.*, 52 F.3d 108, 112 (6th Cir.1995). Here, the Defendants have a clear economic motivation behind discrediting the Plaintiff's claims to the '648 Patent. As County representative Gary Fletcher stated in the January 17, 2008 newspaper article, "[a]nyone who wants to use this technology would have to pay us royalties, which could be a lot of money." [CTI's Reply, Doc. No. 17, p.2]. This economic incentive on the part of the Defendants satisfies the first prong of the five-part *Zenith* test.

Such economic incentive discredits Defendants' reliance upon *The Freecycle Network, Inc. v. Oey*, 505 F.3d 898 (9th Cir.2007). In *Freecycle*, the Ninth Circuit threw out the plaintiff's § 1125(a)(1) claim, finding no financial motivation on the part of the defendant in discrediting plaintiff's trademark. *Freecycle* at 900. The defendant in *Freecycle* was not making the statements at issue for pecuniary gain, unlike the Defendants in this case, and therefore reliance by the Defendants on *Freecycle* is misplaced.

Taking the facts as pled in the Plaintiffs' Complaint as true, Plaintiffs can meet the five-part test required in *Zenith Electronics* for advancing an "exclusive source" claim under §

8

1125(a)(1)(B).  For this reason, the Court **DENIES** Defendants' Motion to Dismiss Count I

    B.  The State Law Claims

The Defendants argue that the state law claims in Counts II-IV should be dismissed based on lack of supplemental jurisdiction. [Doc. No. 8-2, p.9].  Because Counts II-IV stem from a "common nucleus of operative fact," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966), with the Lanham Act claim in COUNT I, this Court's exercise of supplemental jurisdiction over those claims is proper.

District Courts have supplemental jurisdiction over all claims that are "so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  The Supreme Court has held that the propriety of such jurisdiction turns on whether the asserted federal and state claims "derive from a common nucleus of operative fact."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see also Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir.2004).

A "common nucleus of operative fact" arises where "the facts underlying the federal and state claims substantially overlap...[or] the federal claim necessarily brought the facts underlying the state claim before the court."  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir.2006).

All five counts alleged by the Plaintiffs in their Complaint relate to the '648 Patent, actions which logically flowed from the securing of that patent.  Plaintiffs allege a concert of action between County and CTI to exclude the Plaintiffs from the benefits of the '648 Patent, and

9

allege that the Defendants made public statements to discredit the Plaintiffs' claims under the patent, and ultimately fired O'Keefe because of the underlying patent dispute.

The state law tort claims embodied in Counts II-V of this action stem from a "common nucleus of operative fact" with the Count I Lanham Act claim. For this reason, the Court **DENIES** Defendants' Motion to Dismiss Counts II-V.

## IV.  CONCLUSION

For the reasons explained above, the Court **DENIES** the Defendants' Motion to Dismiss [Doc. No. 8].

**IT IS SO ORDERED**.

Dated:  January 23, 2009                    S/ Sean F. Cox
                                            Sean F. Cox
                                            United States District Court Judge

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing order was served upon counsel of record via the Court's ECF System and/or U. S. Mail on January 23, 2009.

                                            s/Jennifer Hernandez
                                            Case Manager to
                                            District Judge Sean F. Cox

10